## Richmond

## CITY OF PORTSMOUTH

v.

## CITIZENS TRUST COMPANY, TRUSTEE, ETC.

March 2, 1979.

Record No. 771060.

Present: All the Justices.

*Gordon B. Tayloe, Jr., City Attorney (Stuart E. Katz, Assistant City Attorney,* on briefs), for plaintiff in error.

*J. Stanley Livesay, Jr. (Schlitz, Levy and Livesay, Ltd.,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

This appeal is a sequel to *Portsmouth* v. *Citizens Trust,* 216 Va. 695, 222 S.E.2d 532 (1976), in which we upheld the validity of an ordinance of the City of Portsmouth imposing a license tax on those engaged in the business of renting residential property, including apartments. We reversed the judgment orders entered by the trial court and remanded the consolidated cases for further proceedings to determine whether the taxpayers were in fact engaged in such business. After conducting an evidentiary hearing, the trial court entered final judgment, to which we granted the City

a writ of error, ruling that Citizens Trust Company, Trustee under the Will of Francis E. Whitlock, deceased (the Trustee), was not engaged in the business of renting residential real estate, and ordering the City to refund license taxes for the years 1972 and 1973 paid under protest by the Trustee.

The evidence is not in dispute. Francis E. Whitlock died in 1962 leaving his will under which the Trustee qualified to hold and manage certain trust assets, including stock in a corporation which owned two adjoining apartment buildings containing twelve apartment units. In 1969, upon dissolution of the corporation, the Trustee acquired title to the apartment buildings as the share of the trust estate in the assets of the corporation. The Trustee borrowed money to restore the apartments to rental condition and employed C. Roy Kelley Realty Company (Kelley) as its agent to manage the properties. Kelley's services continued until the buildings were sold by the Trustee in 1976.

During its management of the apartment buildings, Kelley placed and replaced tenants, arranged for necessary repairs and maintenance, provided janitorial service, collected the rents, sued tenants for delinquent rental payments, deducted management fees, and forwarded net rental checks and statements of receipts and disbursements at regular intervals to the Trustee. Leases with tenants were signed by Kelley for the Trustee as lessor, but showed the Trustee as owner and Kelley as rental agent.

The Trustee routinely paid bills for taxes, water, insurance, and electricity. A committee of Citizens Trust Company met monthly and reviewed the assets in the Whitlock Trust. The committee considered the apartment property to be an imprudent investment for the Trust and attempted to dispose of it for several years before an acceptable sale was finally consummated. For some months prior to sale the Trustee required Kelley to obtain the Trustee's approval before incurring any expense item in excess of $100. Citizens Trust Company held title as trustee to only one commercial property and to no residential properties other than the apartment buildings in the Whitlock Trust and residences that were lived in and managed by life tenants. With Kelley functioning as its rental agent, the Trustee did not devote any time to renting the Whitlock apartments.

The common law definition of "engaged in business", incorporated in Ordinance No. 1973-97 for the tax year beginning May 1, 1973, and, under our holding in *Portsmouth* v. *Citizens Trust, supra*, applicable to Ordinance No. 1971-52 for the tax year

beginning May 1, 1972, is stated as follows in *Krauss* v. *City of Norfolk*, 214 Va. 93, 95, 197 S.E.2d 205, 206-07 (1973), quoting from *Young* v. *Town of Vienna*, 203 Va. 265, 267, 123 S.E.2d 388, 390 (1962):

> . . . [A] course of dealing which requires the time, attention and labor of the person so engaged for the purpose of earning a livelihood or profit. . . . It implies a continuous and regular course of dealing, rather than an irregular or isolated transaction . . .

We recognized in *Bott* v. *Commonwealth*, 187 Va. 745, 48 S.E.2d 235 (1948), that operation of an apartment house may be included in the broad meaning of the word "business". In that case, however, we held that the General Assembly did not intend to include the operation of an apartment house as a business subject to a tax on capital. We were persuaded by the fact that during the more than forty years the tax on capital had been in force, the administrative officers responsible for its enforcement had so construed the law, and the General Assembly had apparently acquiesced in this construction. Thus, *Bott* turned upon the rule that a taxing statute or ordinance must be construed to give effect to the legislative purpose of the law; it does not control the present case.

Both the 1971 and 1973 Portsmouth ordinances imposed a license tax upon "[e]very person engaged in the business of renting residential property, including houses, apartments and dwelling units . . . ." This language is broad enough to include those who were engaged in the business of renting residential property not only as principals acting for themselves but also as principals acting through agents.

The word "person" is also broadly defined in the Portsmouth ordinances to include a "person, company, firm, corporation or association". The Trustee argues that because a trust is not expressly included in the definition it must have been intentionally excluded. We disagree.

The definition of "person" is comprehensive rather than selective; it does not describe the various fiduciary capacities in which the legal entities included therein may function, whether as trustees, receivers, executors, or otherwise. In the present case,

the Trustee is a corporate trustee acting under a testamentary trust, and as such, it is a "person" within the meaning of the Portsmouth ordinances.

In its oral opinion the trial court ruled that the Trustee was not engaged in the business of renting property, as Citizens Trust Company did not solicit such business, held only the one estate with apartment buildings as trust assets, and merely administered the rents received from the real estate agent that managed the properties. This ruling ignores the agency relationship that existed between the Trustee and Kelley, under which the Trustee operated the apartment building enterprise through a professional real estate agent.

Title to and control of the assets, as well as the responsibility for making policy decisions affecting the properties, remained in the Trustee, and required of it some time, attention, and labor, though less than that required of the agent. However, no exemption is provided in the ordinances for principals acting through real estate agents or other agents. Therefore, we construe the ordinances to apply to the Trustee, engaged in its own behalf through its agent, Kelley, in the rental of apartments for the purpose of earning a profit.

The trial court also considered the activity of the Trustee to constitute an isolated transaction. While the evidence shows that Citizens Trust Company as a fiduciary did not ordinarily engage in the management of real estate or the operation of a business, and that it did not regard such enterprises as suitable for trust estates, the fact remains that two buildings containing twelve rental units were held by the Trustee as trust assets for a period of seven years. During that time the Trustee and its agent dealt regularly and continuously with the properties in numerous transactions involving the placing and replacing of tenants, collection of rents, and payment of insurance premiums, utility charges, real estate taxes, and charges for maintenance and repair services. We believe that this activity evidenced a continuous and regular course of dealing rather than an isolated transaction. Therefore, we hold that the Trustee was engaged in the business of renting property under the provisions of the Portsmouth ordinances.

In view of its ruling that the Trustee did not come within the provisions of the ordinances, the trial court found it unnecessary to rule on the contention of the Trustee that the ordinances were invalid because the City of Portsmouth had enforced them by administrative use of a numerical test in violation of principles

enunciated by us in *Richmond* v. *Beltway Properties,* 217 Va. 376, 228 S.E.2d 569 (1976). The Trustee has assigned cross-error to the refusal of the trial court to invalidate the ordinances on that ground.

In *Beltway Properties,* we affirmed the ruling of the lower court that an ordinance of the City of Richmond, imposing a license tax upon every person engaged in the business of renting four or more dwelling units, was invalid because as drafted, adopted, administered and enforced, it levied a tax to be determined solely by the application of a numerical test. Unlike the Portsmouth ordinance considered by us in *Portsmouth* v. *Citizens Trust Co., supra,* the proscribed numerical test provision was an integral part of the Richmond ordinance. We held that the trial court's finding of non-severability was justified by the evidence.

The Trustee argues that, despite the elimination of a numerical test provision from the Portsmouth ordinances, they were being administered by the Commissioner of the Revenue by application of a numerical test. The evidence, however, fails to support the Trustee's position.

The Commissioner testified that he was aware that he could not legally use a numerical test to determine who was engaged in the business of renting residential property, and that he did not do so. He used a numerical guideline of ten apartment units, but he made his actual determination based upon detailed information, obtained through interrogatories, as to the number of employees engaged in the operation of the property, the responsibility of the landlord for payment of bills for utilities, taxes, maintenance and repairs, the nature and extent of services furnished for the tenants, and other pertinent facts. In answer to an inquiry by the trial court, the Commissioner testified that an owner of an apartment house with fewer than ten units could be subject to the license tax if he paid the utility bills and real estate taxes, provided garbage service, and repaired the roof, all facts that would be considered in making an informed judgment as to license tax liability. Thus, there is no evidence that the Commissioner improperly applied a numerical test.

For the reasons assigned, the judgment of the trial court will be reversed and final judgment will be entered here for the City of Portsmouth.

*Reversed and final judgment.*